UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. CR406-095 |
| | ) | |
| KEVIN LAVOY ROBINSON and | ) | |
| DEMOND R. MILLS, | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendants have filed motions to suppress all evidence seized following the stop of the vehicle in which they were traveling on February 8, 2006. Docs. 30, 38, 40. The Court held an evidentiary hearing on this matter on November 7, 2006, at which time the government offered testimony from Deputy Sheriff Mark Crowe and Corporal John Meacham of the Bryan County Sheriff's Department. Defendant Robinson testified on his own behalf, relating a somewhat different version of the events which occurred immediately after the traffic stop. For the following reasons, the motions to suppress should be DENIED.

I. **BACKGROUND**

Deputy Crowe was working traffic enforcement on the northbound lanes of Interstate 95 in Bryan County, Georgia on February 8, 2006, around 11:54 p.m., when he observed a silver passenger car occupied by two males traveling in the center lane. The vehicle intrigued Deputy Crowe and he pulled away from his stationary position at mile post 81 to follow the vehicle. He then observed the vehicle cross from the center lane into the right lane and then return to the center lane when other cars were within two to three car lengths of the vehicle. At that time, Deputy Crowe initiated a traffic stop on the vehicle near mile post 83 for weaving over the roadway.

Deputy Crowe approached the vehicle and asked the driver, defendant Robinson, to step to the rear of his car and produce his license. Robinson complied and provided his license as requested. Deputy Crowe then inquired into the vehicle's ownership and defendants' travel plans. Robinson explained that the vehicle belonged to his girlfriend[1] and that she had loaned the vehicle to him so that he could drive the passenger, whom

---

[1] At the evidentiary hearing Robinson testified that he had borrowed the vehicle from a stripper in Daytona Beach, Florida named "Fluff."

2

he referred to solely as "Mouse," from Daytona Beach to Delaware. Deputy Crowe requested the insurance and registration papers for the vehicle, and Robinson informed him that Mouse could produce them. Deputy Crowe retrieved the documents from Mouse (defendant Mills) and determined that the car was registered to an individual named John Greggo. Neither defendant expressed any familiarity with Mr. Greggo.

Deputy Crowe requested a license check and criminal history report on defendant Robinson. Although his license was valid, the criminal history report revealed that Robinson had a prior felony conviction for possession of cocaine. Deputy Crowe began to issue defendant Robinson a warning citation for weaving over the roadway. While issuing the warning, Deputy Crowe informed defendant Robinson that motorists sometimes trafficked in drugs, weapons, and large sums of money along Interstate 95 and requested consent to search the vehicle. Defendant Robinson declined to give his consent.

As Deputy Crowe continued to write the warning, he asked a fellow officer, who had arrived as back-up, to call for a "canine unit" to come to the scene. Approximately seven or eight minutes had elapsed between the

3

initiation of the stop and the call for the drug dog. Corporal Meacham, who was stationed on I-95 at mile post 82 with the dog,[2] responded to the call and arrived at the scene of the stop within a minute. While Deputy Crowe was completing the courtesy citation, Corporal Meacham led his dog around the vehicle. When the dog alerted on the rear passenger side door, Meacham entered the vehicle and discovered a package containing cocaine.

## II.  ANALYSIS

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809 (1996). The existence of probable cause depends purely on the objective facts available to the officer. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. For this reason, the Supreme Court has rejected the notion that a traffic stop based on probable cause is constitutionally permissible only if a reasonable officer would have made

---

[2]Corporal Meacham testified that this type of "criminal interdiction" is a commonly used law enforcement technique on account of the large problem with drug trafficking along the I-95 corridor and that he was stationed on that route at that time in order to render any necessary assistance to the officers.

4

the stop solely for the purpose of enforcing the traffic laws. Id. at 813-15; see Riley v. City of Montgomery, 104 F.3d 1247, 1252 (11th Cir. 1997) (holding that the constitutional reasonableness of a traffic stop is determined irrespective of the intent of the individual officer or a theoretical "reasonable officer"). Therefore, "a police officer may stop a vehicle '[w]hen there is . . . probable cause to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 668 (1979)).

Deputy Crowe offered undisputed testimony that defendants' vehicle weaved from the center lane of traffic into the right-hand lane and then back into the center lane on I-95 and that other cars were travelling near defendants' vehicle at the time. The Georgia motor vehicle code provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." O.C.G.A. § 40-6-48(1). "Weaving without reason into nearby lanes violates O.C.G.A. § 40-

5

6-48(1)." Viau v. State, 579 S.E.2d 52, 55 (Ga. App. 2003). When Deputy Crowe observed defendants' vehicle weaving in a manner prohibited by Georgia law, he was justified in initiating the traffic stop. During the course of the stop, as he was writing defendant Robinson a courtesy citation, Deputy Crowe requested that a drug dog be brought to the scene. The dog arrived within a minute of his request and alerted on defendants' vehicle shortly thereafter.

While a dog sniff performed during a routine traffic stop does not violate the Fourth Amendment, "a seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407-408 (2005) (holding that a dog sniff of a vehicle does not infringe a person's constitutionally protected interest in privacy and therefore does not change the character of a traffic stop that is "lawful at its inception and otherwise executed in a reasonable manner"). Defendants contend that the Court should suppress the evidence seized during this traffic stop because it was unreasonably extended beyond the initial reason for the stop. In this regard, defendant Robinson testified

that Deputy Crowe issued him a courtesy warning <u>before</u> the dog arrived and confiscated the citation once defendant refused to consent to a search of his car. If these were the facts—i.e., if the warning ticket had issued and the traffic stop had thus been completed before the dog's alert—then suppression would be required, for officers may not prolong a traffic stop for the sole purpose of securing the presence of a drug dog. <u>United States v. Boyce</u>, 351 F3d 1102, 1110 (11th Cir. 2003); <u>see</u> <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001). But after considering the testimony and assessing the credibility of the witnesses, the Court simply does not believe defendants' version of the facts. Instead, the Court accepts Deputy Crowe's testimony that he had yet to issue the warning ticket when the dog arrived and alerted on defendant's vehicle. Therefore, probable cause[3] to search defendant's vehicle arose before the traffic stop had concluded.

The Eleventh Circuit, addressing the length of a constitutional stop, has stated that "[w]here at its inception, a traffic stop is a valid one for a violation of the law, we doubt that a resultant seizure of no more than

---

[3] When the drug dog alerted to the presence of drugs in the vehicle, the officers had probable cause to search the vehicle. <u>See</u> <u>United States v. Glinton</u>, 154 F.3d 1245, 1257 (11th Cir. 1998).

seventeen minutes can ever be unconstitutional on account of its duration: the duration is too short." United States v. Hernandez, 418 F.3d 1206, 1212 n.7 (11th Cir. 2005). In this case, approximately ten minutes elapsed between the traffic stop and the dog's alert on defendants' vehicle, well within the presumptively legitimate time-frame established by Hernandez. During that ten-minute period, Deputy Crowe was engaged in the normal procedures associated with a traffic stop, which involved obtaining Robinson's drivers license, retrieving the insurance and registration papers from the passenger, requesting a license and criminal history check on the driver, and asking pertinent questions about who owned the vehicle and how defendants came into its possession. Given the time it would take to complete these routine and appropriate steps, it is not surprising that Deputy Crowe was still in the process of issuing the warning citation when, some ten minutes into the stop, the officers developed probable cause to enter the vehicle.

## III. CONCLUSION

Deputy Crowe lawfully initiated a traffic stop on defendants' vehicle

after observing the vehicle weaving across the roadway in violation of the Georgia motor vehicle code. During the course of the traffic stop, as defendant Robinson was being issued a courtesy warning for this violation, a drug dog alerted on the vehicle. The traffic stop was in progress for only nine or ten minutes before the dog's alert furnished probable cause to search the vehicle. Accordingly, no unreasonable extension of the stop occurred in this case, and defendants' motions to suppress should be DENIED.

**SO REPORTED AND RECOMMENDED** this 13TH day of **November, 2006.**

*[signature]*
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**